UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, and THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE MARBLE INDUSTRY PENSION FUND, THE MARBLE INDUSTRY ANNUITY FUND, THE MARBLE INDUSTRY TRUST FUND, and TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND,

21 CV _____

**COMPLAINT**

Plaintiffs,

-against-

STAR CONSTRUCTION & STONE INC. and STAR MARBLE & GRANITE INC.

Defendants.

---

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a civil action pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act of 1947, ("LMRA"), 29 U.S.C. § 185, and other applicable law, to collect delinquent employer contributions to a group of employee benefit plans, and for related relief.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this action arising under ERISA and the LMRA pursuant to 28 U.S.C. § 1331 and pursuant to Section 301(c) of the LMRA, 29 U.S.C. § 185(c), and Section 502(e)(1) of ERISA, 29 U.S.C. § 132(e)(1).

3. Venue is proper in this judicial district pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a), and Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as Plaintiffs are administered in this district.

## THE PARTIES

4. Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Tile Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the Tile Funds are fiduciaries of the Tile Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Tile Funds are multiemployer employee benefit plans within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3), (37). The Tile Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

5. Plaintiffs Trustees of the Local 7 Marble Industry Pension Fund, the Local 7 Marble Industry Annuity Fund, the Local 7 Marble Industry Trust Fund (collectively, the "Marble Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the Marble Funds are fiduciaries of the Marble Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Marble Funds are multiemployer employee benefit plans within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3), (37). The Marble Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

6. Plaintiff Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "International Fund") is an employer and employee trustees of multiemployer labor-management trust fund organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the International Fund are fiduciaries of the International Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). The International Fund is a multiemployer employee benefit plans within the meaning of Section 3(3), (37) of ERISA, 29 U.S.C. § 1002(3), (37). The International Fund maintains its principal place of business at 620 F Street, N.W., Washington, D.C. 20004.

7. Defendant Star Construction & Stone Inc. ("SCS") is a corporation organized under the laws of the State of New York. At relevant times, SCS was engaged in business as an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185. Upon information and belief, SCS maintains its principal places of business at 791 Onderdonk Avenue, Suite 2L, Ridgewood, NY 11385, 23-09 24th Avenue, Astoria, New York 11102, and 58-59 59th Street, Maspeth, NY 11378.

8. Defendant Star Marble & Granite Inc. ("SMG") is a corporation organized under the laws of the State of New York. At relevant times, SMG was engaged in business as an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185. Upon information and belief, SMG maintains a place of business at 791 Onderdonk Avenue, Suite 2L, Ridgewood, NY 11385, 23-09 24th Avenue, Astoria, New York 11102, and 58-59 59th Street, Maspeth, NY 11378.

## FACTUAL ALLEGATIONS

### *The Collective Bargaining Agreements*

9. The Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers, (the " Tile Union"), is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the LMRA, 29 U.S.C. § 142.

10. The Marble Carvers, Cutters, and Setters Union, Local Union No. 7 of the International Union of Bricklayers and Allied Craftsman and the Compact Labor Club of Marble Workers, Riggers, Crane and Derrickman of New York and Vicinity, Local No. 7 of The International Union of Bricklayers and Allied Craftsmen, (collectively, the "Marble Union," together with the Tile Union, hereinafter referred to as the "Unions"), is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the LMRA, 29 U.S.C. § 142.

11. At all times relevant hereto, SCS is and was a party to, or manifested an intention to be bound by a collective bargaining agreement with the Tile Union, (the "Tile CBA").

12. At all times relevant hereto, SCS is and was a party to, or manifested an intention to be bound by a collective bargaining agreement with the Marble Union, (the "Marble CBA," together with the Tile CBA, hereinafter referred to as the "CBAs").

13. As a signatory employer to the CBAs, SCS was, and is, required to remit contributions to the Tile Funds, the Marble Funds, the International Fund, and the various entities on whose behalf Plaintiffs act as collection agents pursuant to the CBAs, (collectively, the "Funds"), at hourly contribution rates specified in the CBAs, for each hour of work performed by

Defendant SCS's employees in the trade and geographical jurisdiction of the Unions, ("Covered Work").

14. Under the CBAs and the Funds' policies for collection of contributions incorporated therein ("Collection Policy"), if SCS does not remit its required contributions to the Funds by the 15th day of the month that follows SCS's employees' performance of Covered Work, then SCS is delinquent in its contribution obligation under the CBAs.

15. In the event that an employer bound by the CBAs, like Defendant SCS, is delinquent in its contributions to the Funds, then, pursuant to the CBAs and the Funds' Collection Policy, the Funds are entitled to payment of the unpaid contributions, interest on contributions owed to the Tile Funds and the Marble Funds at a rate of ten percent (10%) *per annum*, interest on contributions owed to the International Fund at fifteen percent (15%) *per annum*, liquidated damages in the amount of twenty percent (20%) of the unpaid contributions, the Funds' audit costs, and the Funds' attorneys' fees and costs incurred in obtaining these amounts from the delinquent employer.

16. In addition, the CBAs provide that SCS must furnish the Funds with its books and records for an audit to verify the number of hours of Covered Work performed by SCS' employees and whether SCS satisfied its corresponding contribution obligation to the Funds under the CBAs.

17. The CBAs prohibit SCS from subcontracting any Covered Work to a non-union entity.

18. The CBAs require that, when SCS performs Covered Work, under its own name or under the name of another entity, such as a joint venture or other related company, where SCS (including its officers, directors, owners, partners or stockholders) exercises, either directly or indirectly (such as through family members), any significant degree of ownership, management,

or control of the company or venture, the terms and conditions of the CBAs are applicable to all such work, whether performed by SCS or the related company.

***Plaintiffs' Audit of SCS for January 1, 2017 through December 31, 2018***

19. In June 2021, the Tile Funds completed an audit of SCS's books and records (the "Tile Audit") covering the period from January 1, 2017 through December 31, 2018, (the "Audit Period").

20. The Tile Audit revealed that SCS owed the Tile Funds a total delinquency of $6,085.32, consisting of delinquent contributions of $3,729.49, interest thereon of $963.28, liquidated damages of $645.88, and audit costs of $746.67.

21. In June 2021, the Marble Funds completed an audit of SCS's books and records (the "Marble Audit," together with the Tile Audit, hereinafter referred to as the "Audits") covering the Audit Period.

22. The Marble Audit revealed that SCS owed the Marble Funds a total delinquency of $548,318.94, consisting of delinquent contributions of $437,993.90, interest thereon of $106,591.71 and audit costs of $3,733.33.

23. Because the Marble Funds have had to file this action to collect the delinquency identified in the Marble Audit, the Marble Funds are also entitled, under the Marble CBA, the Collection Policy, and ERISA, to liquidated damages of $87,598.78.

***SMG is the Alter Ego, Successor, and Single Employer of SCS***

24. At relevant times, Defendants are and were alter egos of each other or a predecessor/successor, as they have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

25. At relevant times, notwithstanding any nominal separation between them, Defendants also constituted a single integrated enterprise and had interrelated and interdependent operations, common management, centralized control of labor functions, common and/or family ownership, and shared facilities and equipment.

26. Defendants have the same business purpose: installing tile and marble on construction projects in the New York metropolitan area.

27. Defendant SCS is owned by Aurel Ceci.

28. Defendant SMG is nominally owned by Irma Ceci, the wife of Aurel Ceci, SCS's owner.

29. Defendants share the same effective owner: Aurel Ceci.

30. Defendants operate from the same facilities: 791 Onderdonk Avenue, Suite 2L, Ridgewood, NY 11385, 23-09 24th Avenue, Astoria, New York 11102, and 58-59 59th Street, Maspeth, NY 11378.

31. Irma Ceci and Aurel Ceci control the labor relations for Defendants.

32. Irma Ceci and Aurel Ceci are responsible for the administrative duties of Defendants, including invoicing customers, overseeing payroll, and collecting receivables.

33. Defendants share the same employees, including Vasil Alushi, Vannjel Bido and Enrik Lemollari.

34. Defendants share the same telephone number.

35. Defendants, at all relevant times, have failed to follow ordinary corporate formalities or keep separate records, and there has never been an arm's length relationship between or among them.

36. SMG is a non-union company.

37. In 2018, SMG earned revenue from its non-union tile and marble installation in the amount of approximately $3,000,000.

38. In 2018, SMG employed members of the Tile Union and Marble Union to perform Covered Work for lower wages than that required by the CBAs and for no benefit contributions to the Funds as required by the CBAs.

39. Upon information and belief, Aurel Cecil supervises SMG and SCS employees on construction projects where the employees perform Covered Work.

40. Upon information and belief, Aurel Cecil exercises common control and dominion over Defendants to coordinate his tile and marble installation business and, thereby, avoid SCS's obligations to the Funds under the CBAs whenever possible.

41. Upon information and belief, Defendants have created and/or maintained separate entities to perpetrate a fraud against the Funds, including the avoidance of SCS's obligations to the Funds under the CBAs.

42. As alter egos, predecessor/successors, and a single employer, Defendants are subject to the CBAs and each Defendant is liable for the other's unpaid contributions and obligations to the Funds resulting from the application of the CBAs to Defendants from when Defendants became alter egos, predecessor/successors, and a single employer to the present.

**PLAINTIFFS' FIRST CLAIM FOR RELIEF AGAINST DEFENDANT SCS**
(*Violation of the CBA under ERISA and the LMRA*)

43. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

44. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such

contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

45. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes Plaintiffs, as third-party beneficiaries to the CBAs, to file a federal lawsuit regarding an employer's violation of those CBAs and recover the relief identified therein.

46. At relevant times, SCS was a party to or otherwise bound by the CBAs.

47. The CBAs and the Collection Policy require SCS to remit specified hourly contributions to the Funds in connection with all work performed within the trade and geographical jurisdiction of the Unions and to submit to and comply with periodic payroll audits when requested by Plaintiffs.

48. Defendant SCS violated Section 515 of ERISA, 29 U.S.C. § 1145, by failing to remit required contributions to the Funds for its employees' Covered Work, in contravention of the CBAs and the Funds' Collection Policy, in the principal amount of at least $441,722.90, as revealed by the Audits, plus any additional delinquent contributions identified during this lawsuit.

49. Accordingly, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBAs, and the Funds' Collection Policy, Defendant SCS is liable to the Funds in an amount equal to at least $441,722.90 in delinquent contributions, plus any additional delinquent benefits contributions identified through this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs, including audit costs, incurred by the Funds in collecting these amounts.

**PLAINTIFFS' SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
(*Alter Ego/Successor Liability/Single Employer under the CBA*)

50. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

51. At relevant times, Defendants were alter egos, predecessor/successors, and a single employer as they have substantially identical management, business purpose, operations, equipment, customers, supervision, and ownership and interrelation of operations, centralized control of labor functions, and common office facilities.

52. By virtue of their status as alter egos, predecessor/successors, and a single employer, Defendants are and, at all relevant times, have been bound by the CBAs and the Collection Policy.

53. Accordingly, Defendants are jointly and severally liable for each other's obligations under the CBAs and under the Collection Policy that result from the application of the CBAs to Defendants for the entire period of their status as alter egos, predecessor/successors, and a single employer.

54. Defendants violated the CBAs when they failed to remit all contributions for work performed within the trade and geographical jurisdiction of the Unions.

55. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBA, and the Collection Policy, Plaintiffs are entitled to an order: (1) declaring that Defendants are alter egos, predecessor/successors, and a single employer, constituting a single integrated enterprise; (2) directing SMG to submit to an audit of its books and records for the period of October 13, 2015 to the present to determine the extent of their delinquent contributions; and (3) finding that Defendants are jointly and severally liable for any delinquent contributions revealed by an audit of SMG and by the Audits of SCS, plus the corresponding interest, liquidated damages, audit costs, and attorneys' fees and costs, as provided for in the CBAs, the Collection Policy, and ERISA.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

(1) On Plaintiffs' First Claim for Relief, award a Judgment to Plaintiffs against Defendant Star Construction & Stone Inc. in the amount of $554,404.26, representing the delinquent contributions, interest, liquidated damages, and audit costs as revealed by the Audits, plus Plaintiffs' attorneys' fees and costs incurred in connection to this action, pre-judgment interest calculated pursuant to the CBA, and post-judgment interest at the statutory rate;

(2) On Plaintiffs' Second Claim for Relief, (a) issue an Order declaring Defendants to be alter egos, predecessor/successors, and a single employer; (b) issue an Order requiring Defendant Star Marble & Granite Inc. to submit to an audit to quantify their delinquent contributions owed to Plaintiffs from October 13, 2015 through the present; and (c) render judgment against Defendants, joint and severally, for: (i) all delinquent contributions owed to Plaintiffs by Defendants for the period of October 13, 2015 through the present as revealed by an audit of Defendant Star Marble & Granite Inc., by the Audits of Defendant Star Construction & Stone Inc., or otherwise revealed during this litigation; (ii) interest thereon in accordance with the CBAs and Collection Policy; and (iii) an amount equal to the greater of either (A) interest on the unpaid contributions, or (B) liquidated damages of twenty percent (20%) of the principal amount of the delinquency owed by Defendants to Plaintiffs from October 13, 2015 through the present;

(3) Award Plaintiffs all reasonable attorneys' fees, expenses, and costs that they incur in prosecuting this suit; and

(4) Award Plaintiffs such other and further relief as is just and proper.

Dated: New York, New York  
October 13, 2021

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: ___/s/ *John M. Harras*___  
John M. Harras, Esq.

                                                40 Broad Street, 7th Floor
                                                New York, New York 10004
                                                (212) 943-9080
                                                jharras@vandallp.com
                                                *Attorneys for Plaintiffs*